# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:          2022AP746

Complete Title of Case:

**CREDITBOX.COM, LLC,**

       **PLAINTIFF-RESPONDENT,**

    **V.**

**ANTJUAN WEATHERS,**

       **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | June 22, 2023 |
| Submitted on Briefs: | August 25, 2022 |
| Oral Argument: | January 23, 2023 |

| | |
|---|---|
| JUDGES:<br>    Concurred:<br>    Dissented: | Blanchard, P.J., Kloppenburg, and Graham, JJ. |

Appellant
ATTORNEYS:          On behalf of the defendant-appellant, the cause was submitted on the briefs of *Briane F. Pagel* of *Lawton & Cates, S.C.*, Madison.

Respondent
ATTORNEYS:          On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Turek* and *Kevin F. Geary* of *Gass Turek LLC*, Milwaukee.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 22, 2023**

**Samuel A. Christensen
Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP746**

**STATE OF WISCONSIN**

Cir. Ct. No.  2021SC1581

**IN COURT OF APPEALS**

---

CREDITBOX.COM, LLC,

   PLAINTIFF-RESPONDENT,

V.

ANTJUAN WEATHERS,

   DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed in part; reversed in part and cause remanded.*

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

¶1    BLANCHARD, P.J.   This appeal calls for the interpretation of two provisions of the Wisconsin Consumer Act ("the Act") to determine whether a debtor has stated counterclaims against a creditor that survive a motion to dismiss.

The two provisions are: WIS. STAT. § 421.108 (2021-22),[1] which provides that "[e]very agreement or duty within" the Act imposes on the parties "an obligation of good faith in its performance or enforcement"; and WIS. STAT. § 425.102, which limits the scope of some claims that may be brought under subchapter I of WIS. STAT. ch. 425, such as those alleging unconscionability.

¶2 CreditBox.com LLC sued Antjuan Weathers, alleging that Weathers defaulted on a loan agreement. Weathers responded by filing good faith and unconscionability counterclaims under the Act. The circuit court granted CreditBox's motion for voluntary dismissal of its claim.[2] The court also granted CreditBox's motion to dismiss both of Weathers' counterclaims, which are the rulings challenged by Weathers that we address.

¶3 The circuit court dismissed Weathers' good faith counterclaim on the ground that it is not supported by sufficient allegations of fact. We reverse that ruling based on our conclusion that one set of allegations in the counterclaim is sufficient to state a claim under WIS. STAT. § 421.108, although we separately conclude that two other sets of allegations are not sufficient.

¶4 The circuit court dismissed the unconscionability counterclaim based on its interpretation of the statutory scope rule, WIS. STAT. § 425.102, which states that a consumer may bring such a claim "only in response to 'actions or other

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] On appeal, Weathers challenges the circuit court ruling granting CreditBox's motion for voluntary dismissal of its claim, but only if we reject Weathers' argument that the unconscionability counterclaim should not be dismissed. For reasons we explain in the text below, we agree with Weathers that the unconscionability counterclaim should not be dismissed based on the arguments now advanced by CreditBox. Therefore we deem Weathers to have abandoned his challenge to voluntary dismissal of the CreditBox action and accordingly we affirm on that issue.

proceedings brought by a creditor to enforce rights arising from consumer credit transactions.'" *See **Duncan v. Asset Recovery Specialists, Inc.***, 2022 WI 1, ¶¶27-28, 400 Wis. 2d 1, 968 N.W.2d 661 (applying § 425.102 to determine that plaintiff could not bring unconscionability claim under WIS. STAT. § 425.107 because plaintiff brought it "'via a separate civil lawsuit,'" and not "in response to 'actions or other proceedings brought by a creditor'" (quoted authority omitted)). The circuit court here reasoned that Weathers cannot pursue this counterclaim against CreditBox because the dismissal of CreditBox's claim left no "actions or other proceedings brought by a creditor" pending against Weathers. We reverse this ruling. We conclude that § 425.102 does not require dismissal for the following reasons: when CreditBox filed its lawsuit against Weathers to enforce the loan agreement, this triggered the potential for an unconscionability counterclaim, regardless of the fact that CreditBox moved for voluntary dismissal of its claim against Weathers, and *Duncan* is distinguishable on these facts.

## BACKGROUND

¶5      In June 2015, CreditBox and Weathers entered into an agreement for a $500 loan. Weathers was to repay the principal and finance charges by making 52 weekly installments of $37.61 each, with the option to pay down the loan early. According to the loan agreement, its annual percentage interest rate would be 399.0250%. As a result, if Weathers followed the payment plan and did not make early payments he would end up paying a total of $1,955.72, including $1,455.72 in finance charges.

¶6      CreditBox initiated a small claims action against Weathers, alleging that Weathers failed to make some of the payments required under the loan agreement. CreditBox sought a money judgment totaling $2,219.40, the alleged outstanding principal, interest, and fees.

¶7      On May 11, 2021, Weathers, pro se, filed a preprinted small claims answer in which he checked the boxes indicating that he did not contest CreditBox's claims and did not have a counterclaim.  Accordingly, the clerk of court promptly entered a judgment against Weathers that totaled $2,579.90.

¶8      Weathers then reversed course.  Now represented by counsel, on May 28, 2001, he moved to vacate the judgment and reopen the case.  This motion was accompanied by an affidavit.  Weathers averred that he was "unsure whether I ever defaulted on the loan in fact, because payments were to be deducted [by CreditBox] from my bank account automatically, and to my knowledge they were deducted."  On June 22, 2021, the court commissioner granted Weathers' motion, vacating the judgment and reopening the small claims proceeding.

¶9      On July 7, 2021, CreditBox moved the court commissioner for voluntary dismissal of its action.  CreditBox argued that it was entitled to dismissal under WIS. STAT. § 805.04(1) because Weathers had not filed a responsive pleading.[3]  In the alternative, CreditBox argued that it was entitled to a court-ordered dismissal under § 805.04(2) because:  no counterclaims by Weathers were pending against it, the case was at an early stage, CreditBox had diligently pursued dismissal, and dismissal posed no risk of duplicative litigation.[4]

¶10      On July 19, 2021, Weathers filed a brief opposing CreditBox's motion for voluntary dismissal.  Weathers also filed an amended answer that included the

---

[3] Under WIS. STAT. § 805.04(1), a plaintiff may dismiss its action without order of the court by filing a notice of dismissal "before service by an adverse party of responsive pleading or motion."

[4] Under WIS. STAT. § 805.04(2), "Except as provided in sub. (1), an action shall not be dismissed at the plaintiff's instance save upon order of court and upon such terms and conditions as the court deems proper."

two counterclaims against CreditBox based on provisions in the Act: a good faith claim under WIS. STAT. § 421.108 and an unconscionability claim under WIS. STAT. § 425.107. On August 2, 2021, CreditBox filed a motion to dismiss Weathers' counterclaims pursuant to WIS. STAT. § 802.06(2)(a)6., on the grounds that each failed to state a claim upon which relief may be granted.

¶11 The circuit court, on de novo review of court commissioner rulings, granted CreditBox's motions for voluntary dismissal of its claim and for dismissal of both of Weathers' counterclaims.

## DISCUSSION

¶12 Two primary questions are presented on appeal. First, did Weathers adequately plead a good faith counterclaim under WIS. STAT. § 421.108? We conclude that one set of allegations states a claim, but the other two sets do not. Second, can Weathers pursue an unconscionability counterclaim against CreditBox under WIS. STAT. § 425.107, consistent with *Duncan*, given the fact that CreditBox moved for voluntary dismissal of its action before Weathers brought the unconscionability counterclaim? We conclude that he can.

¶13 The following general legal standards apply across issues.

¶14 We review de novo a circuit court decision resolving a motion to dismiss a complaint based on the argument that the complaint does not state a claim upon which relief can be granted. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. "When we review a motion to dismiss, factual allegations in the complaint are accepted as true for purposes of our review," as well as all "reasonable inferences" that arise from the allegations. *Id.*, ¶¶18-19. "[A] court cannot add facts in the process of construing a complaint"

5

and "legal conclusions stated in the complaint are not accepted as true, and they are insufficient to enable a complaint to withstand a motion to dismiss." *Id.*, ¶19. "In order to satisfy WIS. STAT. § 802.02(1)(a), a complaint must plead facts, which if true, would entitle the plaintiff to relief." *Data Key*, 356 Wis. 2d 665, ¶21. Put another way, plaintiffs must "allege facts that plausibly suggest they are entitled to relief." *Id.*, ¶31.

¶15 "Interpretation and application of statutes and case law to a set of facts are matters of law that we decide de novo." *Meyers v. Bayer AG*, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448.

¶16 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." *Id.*, ¶46. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.*

### I. Weathers' Good Faith Counterclaim Under WIS. STAT. § 421.108

¶17 To date, the Act's good faith provision has not been interpreted in a precedential opinion. We first explain basic features of the provision. Then we provide additional background and present the parties' arguments and explain our conclusions.

## A. WISCONSIN STAT. § 421.108

¶18    WISCONSIN STAT. § 421.108 provides:

> **Obligation of Good Faith.** Every agreement or duty within [WIS. STAT.] chs. 421 to 427 imposes an obligation of good faith in its performance or enforcement. "Good faith" means honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing.

*See* WIS. STAT. § 421.101 (defining the Act as constituting chapters 421 to 427 of the Wisconsin Statutes).[5]  The first sentence of § 421.108 addresses the proper sources of the good faith obligation and the second sentence defines the nature of the obligation.  We address the two sentences in turn.[6]

¶19    As Weathers argues and CreditBox ultimately concedes, the only reasonable interpretation of the first sentence of WIS. STAT. § 421.108 is that it imposes its obligation of good faith on the parties for performance or enforcement

---

[5]  CreditBox does not dispute that provisions of the Act govern the transaction here because it was a "consumer loan."  *See* WIS. STAT. § 421.301(12) (defining "consumer loan" transactions subject to the Act).  Nor does CreditBox dispute the general proposition that a consumer may state a cause of action against a lender based on WIS. STAT. § 421.108.  *See* WIS. STAT. § 425.301(2) ("Any right or obligation declared" in the Act "is enforceable by action unless the provision declaring it specifies a different and limited effect.").

[6] We observe that the Act provides definitions for two terms used in WIS. STAT. § 421.108—"agreement" and "transaction"—but those definitions have no bearing on the arguments of the parties on appeal.  *See* WIS. STAT. § 421.301(3) ("'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance."), § 421.301(44) ("'Transaction' means an agreement between 2 or more persons, whether or not the agreement is a contract enforceable by action, and includes the making of and the performance pursuant to that agreement.").

of both (1) agreements that are subject to the Act and (2) duties that are defined in the Act. We now explain why we agree.[7]

¶20    The wording of the first sentence may be awkward in referring to "[e]very agreement … within" the Act. But we see no other way to give reasonable meaning to the more complete clause—"[e]very agreement … within [WIS. STAT.] chs. 421 to 427 imposes an obligation of good faith in its performance or enforcement"—than to interpret it to require good faith in the performance or enforcement of agreements that are subject to the Act. In other words, "[e]very agreement … within" the Act means every agreement that is subject to the Act. Notably, WIS. STAT. § 421.108 draws a distinction between "agreement or duty," and we avoid statutory interpretations that treat statutory terms as surplusage. *See Kalal*, 271 Wis. 2d 633, ¶46.

¶21    Our construction that WIS. STAT. § 421.108 involves both contract-based and Act-based obligations also gives parallel meanings to parallel clauses. We refer to the clause "[e]very … duty within [WIS. STAT.] chs. 421 to 427 imposes an obligation of good faith in its performance or enforcement," which means that duties, as well as agreements, must be performed or enforced in good faith. Thus, just as "[e]very agreement … within" the Act refers to every agreement that is

---

[7] CreditBox's position on this issue has shifted. In its briefing on appeal, CreditBox argues that the only obligations WIS. STAT. § 421.108 creates are those defined in the Act, and not obligations contained in agreements subject to the Act. Relying in part on statements in *Parent v. Home Depot U.S.A., Inc.*, No. 09-C-951, 2011 WL 2650725 (E.D. Wis. July 6, 2011), CreditBox asserts that § 421.108 "acts as a rule of construction by merely codifying the general common law duty of good faith and fair dealing for obligations imposed by the Wisconsin Consumer Act," and similarly asserts that the obligation of good faith "extends only to obligations found in the Act itself." In the same vein, CreditBox states that "the purpose of [§] 421.108" is "to merely compl[e]ment other obligations in the Wisconsin Consumer Act by confirming that those obligations must be performed in good faith." But at oral argument CreditBox acknowledged that obligations of good faith established under § 421.108 can also arise from provisions in agreements subject to the Act. To the extent that some statements in *Parent* could be interpreted to support CreditBox's initial position we disagree for the reasons given in the text.

subject to the Act, so too "[e]very … duty within" the Act refers to every requirement of the Act.

¶22     Our interpretation of the first sentence of WIS. STAT. § 421.108 is also consistent with the Act's explicit "rules of construction," which is a proper interpretive aid. *See, e.g.*, ***Roberts v. T.H.E. Ins. Co.***, 2016 WI 20, ¶28, 367 Wis. 2d 386, 879 N.W.2d 492; ***Kalal***, 271 Wis. 2d 633, ¶49 (recognizing that legislative statements of purpose or scope can inform a plain-meaning statutory interpretation). The Act states that it "shall be liberally construed and applied to promote" "underlying purposes and policies" that include "protect[ing] customers against unfair, deceptive, false, misleading[,] and unconscionable practices by merchants" and "permit[ting] and encourag[ing] the development of fair and economically sound consumer practices in consumer transactions." WIS. STAT. § 421.102(1), (2)(b)-(c). Our construction identifies an expansive protection for consumers and serves the legislature's expressly stated purposes because it requires good faith in the performance or execution of both agreement-created duties and Act-created duties.

¶23     It is true that under Wisconsin common law "'[e]very contract'"—not only contracts that are subject to the Act—"'implies good faith and fair dealing between the parties to it.'" *See* ***Beidel v. Sideline Software, Inc.***, 2013 WI 56, ¶27, 348 Wis. 2d 360, 842 N.W.2d 240 (quoting ***Chayka v. Santini***, 47 Wis. 2d 102, 107 n.7, 176 N.W.2d 561 (1970)). For this reason, one might wonder on first encountering WIS. STAT. § 421.108 about the need for a seemingly redundant good faith obligation that addresses only the subset of contracts that are subject to the Act. But as we now explain, when we turn to the second sentence of § 421.108 defining the nature of the obligation, the definition differs in some respects from the common

law good faith obligation, although there is some overlap in meaning between the two.[8]

¶24    The second sentence defines good faith to mean "honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing." This has two parts: "honesty in fact in the conduct or transaction concerned" and "reasonable commercial standards of fair dealing." Applications of the two parts will no doubt overlap in some circumstances. For example, as Weathers points out, reasonable commercial standards of fair dealing will presumably often call for honesty in fact. For analytical clarity, however, we address them separately, beginning with the honesty-in-fact requirement.

¶25    We conclude that it is appropriate to interpret the honesty-in-fact requirement based on a formulation used in the context of the common law obligation. In discussing the common law obligation, this court has quoted without criticism the following definition contained in a prior version of WIS JI— CIVIL 3044, and the definition appears to us to be a sound interpretation of the statutory language:

---

[8] Caution is required in borrowing or comparing forms of "good faith" referred to in Wisconsin's common law and statutes. A two-justice plurality of our supreme court, in making a point not disputed by the three-justice concurrence, has observed that concepts of "good faith" and "bad faith" can assume different meanings in different statutory and common law contexts. *See Koss Corp. v. Park Bank*, 2019 WI 7, ¶32, 385 Wis. 2d 261, 922 N.W.2d 20 (lead opinion of Roggensack, C.J.). The merits discussion in *Koss* is not on point here, because that case involved interpretation of the Uniform Fiduciaries Act, in which the legislature has adopted a definition of acts done "in good faith" in that distinct context. *See* WIS. STAT. § 112.01(1)(c) ("A thing is done 'in good faith' within the meaning of this section, when it is in fact done honestly, whether it be done negligently or not."). Bearing that caution in mind, we note in the text how some of the language in WIS. STAT. § 421.108 mirrors the common law obligation while other aspects differ.

> [H]onesty in fact in the conduct or transaction concerned …
> is … an honest intention to abstain from taking unfair
> advantage of another, through technicalities of law, by
> failure to provide information or to give notice, or by other
> activities which render the transaction unfair.

*Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 793 n.14, 541 N.W.2d 203 (Ct. App. 1995).[9] This "taking unfair advantage" definition gives meaning to the statutory phrase "honesty in fact," in that a plaintiff needs to show that the defendant had an intention that was not honest and that this was aimed at gaining an unfair advantage.[10] We reject a contention that Weathers suggested at oral argument, namely, that every failure by a creditor to fulfill an obligation created as part of a consumer credit transaction is, by definition, a failure to act with "honesty in fact in the conduct or transaction concerned." We see no basis for such an interpretation of WIS. STAT. § 421.108. This leaves the balance of the second sentence of § 421.108, to which we now turn.

¶26 "[T]he observance of reasonable commercial standards of fair dealing," which on its face refers to the violation of norms or standards of commercial usage, may overlap to a degree with the common law obligation. But it is clearly its own standard. As an example of a difference, this court has explained that, under the common law obligation, "'bad faith'" is conduct defined in the following broad terms: it "'violate[s] community standards of decency, fairness or

---

[9] The court of appeals in *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 541 N.W.2d 203 (Ct. App. 1995), did not cite which version of WIS JI—CIVIL 3044 it relied on.

[10] We observe for context that the honesty-in-fact requirement in WIS. STAT. § 421.108 aligns with the general definition of "good faith" for purposes of the uniform commercial code as a whole as adopted in Wisconsin, which limits the definition of "good faith" to this concept: "'Good faith' means honesty in fact in the conduct or transaction concerned." WIS. STAT. § 401.201(2)(k).

reasonableness.'" *Foseid*, 197 Wis. 2d at 796 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (Am. L. Inst. 1981));[11] *see also id.* (enforcement of the obligation "is intended as a guarantee against 'arbitrary or unreasonable conduct' by a party" to a contract (quoting WIS JI—CIVIL 3044)). The common law obligation is broader than the fair-dealing requirement of WIS. STAT. § 421.108. Under the statutory standard, parties must adhere to "reasonable commercial standards of fair dealing," which requires the application of an objective set of standards that govern fair dealing in commercial practices.

¶27 It is self-evident that determining the substance of the statutory fair-dealing requirement that applies in a given case will present an issue of fact. *See Schaller*, 131 Wis. 2d at 402 (addressing the obligation of good faith in the uniform commercial code, WIS. STAT. § 401.203, and observing that "[t]he issue of good faith is generally for the jury but may in a proper case be decided as a matter of law" in addressing appeal from grant of summary judgment). Therefore, allegations intended to support a claim that the fair-dealing requirement was violated cannot plausibly state a claim if the allegations do not, at a minimum, provide a basis to infer the existence of *some* relevant reasonable commercial standard of fair dealing that *could* be violated, whether that standard is stated in the Act or is instead found to exist in a pertinent commercial setting. It may not be necessary for a complaint alleging a violation of the fair-dealing requirement to explicitly refer to a relevant objective standard to survive a motion to dismiss. But such a complaint that lacks

---

[11] Wisconsin case law addressing the common law obligation of good faith ties it to the RESTATEMENT (SECOND) OF CONTRACTS § 205 (Am. L. Inst. 1981), which states, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *See Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶10 n.8, 348 Wis. 2d 360, 842 N.W.2d 240 (favorably citing reference to Restatement § 205 in the court of appeals opinion under review); *Wisconsin Natural Gas Co. v. Gabe's Const. Co.*, 220 Wis. 2d 14, 21, 582 N.W.2d 118 (Ct. App. 1998) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205); *Foseid*, 197 Wis. 2d at 796-97 (relying on two official comments to Restatement § 205).

reference to a relevant standard (not contained in the Act) risks dismissal because a relevant standard cannot be inferred—that is, no relevant objective standard suggests itself based on all reasonable inferences that arise from the allegations.

¶28 In sum regarding the content of the Act's good faith provision, parties are obligated to act in good faith in the performance or enforcement of an agreement subject to the Act and to the performance or enforcement of a provision of the Act. Further, the honesty-in-fact requirement is violated when a party lacks an honest intention to abstain from taking unfair advantage of another by activities that render the transaction unfair, and the fair-dealing requirement is violated when a party does not observe reasonable commercial standards of fair dealing, which contemplates the application of an objective set of standards.

¶29 Here, it is unclear what the content would be of the set of reasonable commercial standards of fair dealing (not contained in the Act) that Weathers would apply to CreditBox's alleged conduct to establish one or more violations of the fair-dealing requirement. That is, the counterclaim does not suggest a relevant objective standard not set by the Act itself. Weathers acknowledges that at trial he would "likely" have to elicit expert testimony to show that CreditBox's conduct was "not reasonable commercial behavior for a short-term consumer lender." But, Weathers' argument continues, for purposes of a motion to dismiss, the counterclaim contains allegations "that are clearly potentially unreasonable within the field of short-term consumer lending." CreditBox takes the position that the counterclaim fails to state facts from which it could be inferred that its conduct "was unreasonable or violated any kind of standards, [including] commercial standards, or was dishonest in fact."

### B. Additional Background and Analysis

¶30    Weathers' counterclaim alleges three sets of actions or omissions by CreditBox that Weathers argues constituted violations of the obligation of good faith under WIS. STAT. § 421.108:  (1) an attempt by CreditBox to make an allegedly unscheduled electronic funds transfer (EFT) withdrawal from Weathers' bank account because a prior withdrawal attempt by CreditBox had been unsuccessful ("the EFT withdrawal allegations"); (2) "charging off" the debt 60 days after the alleged first day of default, even though a federal guidance document (not referenced in the counterclaim) suggests that charge offs are to occur 120 days after a missed payment, and without providing Weathers with more notice ("the charge-off allegations"); and (3) accelerating the debt and filing its action against Weathers before providing him with notice and an opportunity to cure, in violation of the loan agreement and WIS. STAT. § 425.105(1), which in some circumstances requires the filing of the 15-day notice described in WIS. STAT. § 425.104 ("the notice of right to cure allegations").  We agree with CreditBox that, even assuming as true the factual allegations in the counterclaim and all reasonable inferences in Weathers' favor, both the EFT withdrawal allegations and the charge-off allegations fail to state a claim upon which relief may be granted.  *See Data Key Partners*, 356 Wis. 2d 665, ¶31 (dismissal on a motion to dismiss is appropriate when the plaintiff fails to "allege facts that plausibly suggest" entitlement to relief).  In contrast, we agree with Weathers that the set of allegations surrounding failure to provide notice of default and a right to cure, including the alleged violation of § 425.105(1), survives the motion to dismiss.  We address each set of allegations in turn.

*The EFT Withdrawal Allegations*

¶31    The counterclaim includes the following pertinent allegations. Weathers "originally arranged" through an "EFT authorization" agreement with CreditBox to have payments withdrawn from his bank account "via electronic funds transfer (EFT)" (sometimes referred to as an "EFT payment"). The weekly EFT payments called for in the loan agreement and the EFT authorization "began and were not canceled by Weathers." "If payments commenced weekly on June 26, 2015 (a Sunday), then assuming that [each] payment was due on the first day of each subsequent week … payments would have been due June 26, July 4, 11, 18, and 25; August 1, 8, 15, 22, and 29; and September 5, 12, 19 and 26, for a total of 14 weekly payments due between June 26 and September 26, 2015."[12] CreditBox "alleges [that] Weathers made four total payments, all apparently before August 7, 2015," at which time "a payment was attempted to be withdrawn and was returned." "August 7 was not a date that had originally been scheduled for a payment at the time of entering into the loan agreement." On August 7, CreditBox attempted an EFT payment that was "due prior to August 7, and [the August 7 attempt] was a second or subsequent attempt. This second or subsequent attempt upon information and belief caused Weathers to incur charges at his bank." "[N]o agreement between Weathers and [CreditBox] allowed [CreditBox] to make subsequent attempts to withdraw by EFT a payment that had previously been declined."

¶32    Weathers now argues that these allegations state a claim that CreditBox violated WIS. STAT. § 421.108 by attempting to take an EFT payment from his bank account on August 7, 2015, which CreditBox "was not scheduled" to

---

[12] As we explain in the text below, these allegations misapply the terms of the EFT authorization form to the 2015 calendar.

take, and that the August 7 activity therefore amounted to an "attempt[] [at] a second withdrawal of a payment without a contractual right to do so." CreditBox responds in part that, under the terms of an EFT authorization form that Weathers signed at the time he took out the loan, Weathers explicitly authorized CreditBox to take all actions that Weathers alleges in the counterclaim. Therefore, the CreditBox argument continues, based on the pleadings CreditBox's actions could not violate CreditBox's obligation of good faith under § 421.108.

¶33 We assume without deciding that the EFT withdrawal allegations could state a claim for a violation of WIS. STAT. § 421.108 if Weathers had not signed the EFT authorization form. But dismissal is appropriate when the form is taken into account.

¶34 CreditBox submitted to the court commissioner as an exhibit a two-page EFT authorization form entitled "Optional, Revocable Electronic Fund Transfer Authorization." It purports to have been created by CreditBox and also reflects execution by Weathers on the same day that Weathers executed the loan agreement.[13] By its terms, the EFT authorization form "allows a preauthorized electronic fund transfer payment[,]" withdrawn by CreditBox from Weathers' bank account, starting on June 26, 2015, and "on [w]eekly intervals thereafter." It further states that "[i]f there are insufficient funds in [Weathers'] Account for any EFT Payment to be made on any EFT Payment Date, [CreditBox] may present the debit for such EFT Payment to [Weathers'] Account up to two times thereafter … to process the scheduled payment." In other words, the form authorized CreditBox to

---

[13] For ease of reference, and following the arguments of the parties, we discuss the EFT authorization form as it were an agreement separate from the loan agreement, but our analysis would be the same if the EFT authorization form were considered to be a part of, or incorporated into, the loan agreement.

attempt an out-of-schedule EFT payment from Weathers' bank account up to two times after a scheduled attempt was stymied by insufficient funds.

¶35     The circuit court determined that it could rely on the EFT authorization form to resolve the motion to dismiss in favor of CreditBox, even though the form is not attached to Weathers' counterclaim pleading.  The court based this reliance on *Soderlund v. Zibolski*, 2016 WI App 6, 366 Wis. 2d 579, 874 N.W.2d 561 (2015), which adopts the incorporation-by-reference doctrine.  This doctrine permits courts to consider a document attached to a motion to dismiss without converting the motion to one for summary judgment, so long as the document is referred to in the plaintiff's complaint, it is central to the plaintiff's claim, and its authenticity has not been disputed.  *Id.*, ¶37.  The purpose of the doctrine is to "'prevent[] a plaintiff from evad[ing] dismissal ... simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'"  *See id.*, ¶38 (quoted source omitted).

¶36     Weathers fails to address the EFT authorization form in his opening brief on appeal, even though it provided a basis for the circuit court ruling.  Only in his reply brief does he briefly offer limited arguments, which are submitted too late. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (we need not address arguments raised for the first time in a reply brief).  We are not required to address otherwise undeveloped or abandoned arguments simply because they were discussed at oral argument, *see id.* at 492-93, but we now make additional observations based on references in Weathers' reply brief on appeal and discussion at oral argument.

¶37     Without referencing *Soderlund* in his briefing or during oral argument, Weathers asserts that we cannot rely on the EFT authorization form

because he did not refer to it in his counterclaim. This is not accurate. As summarized above, the counterclaim alleges that Weathers "originally arranged" with CreditBox "to have payments taken out of his [bank] account … via electronic funds transfer (EFT)," referring to this "arrange[ment]" as an "EFT authorization."

¶38 Weathers suggests that the circuit court "prevent[ed]" him from addressing the EFT authorization form, but that suggestion is not supported by any part of the record that he cites or that we independently identify. Further, the record reflects that CreditBox submitted the form to the court commissioner, before the circuit court's de novo review, and therefore counsel for Weathers was presented with this document even before the circuit court litigation.

¶39 Further, when the EFT authorization form is brought into the picture, Weathers' theory of liability for this set of allegations collapses, at least as best we understand the theory. Weathers concedes, by failing to address it, the following dispositive argument made by CreditBox, based on the 2015 calendar and the unambiguous terms of the EFT authorization form. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

¶40 CreditBox points out that August 7, 2015, was six weeks to the day after the June 26 start date provided in the EFT authorization form, and therefore August 7 was a scheduled EFT payment date contemplated in the EFT authorization form. These facts, incorporated by reference into the counterclaim, directly undermine Weathers' theory that CreditBox attempted to collect an EFT payment on a date that was not scheduled for payment, and that the alleged August 7 attempt to collect an EFT payment must have been a second or subsequent attempt that could

have been justified only if CreditBox had made a prior attempt at an EFT payment that was stymied by insufficient funds in Weathers' bank account. Naturally, in order to determine whether Weathers has stated "a plausible claim," we must construe the allegations consistently with the 2015 calendar. *See Data Key Partners*, 356 Wis. 2d 665, ¶¶38, 39, 56 (plaintiff must state "plausible claim").

¶41     As a rejoinder, Weathers notes that the counterclaim does not allege that there were insufficient funds in the bank account on August 7. But that does not matter, because the only basis for the good faith claim appears to be the suggestion that an August 7 attempt to collect an EFT payment was improper, and under the terms of the authorization form it would have been proper. Weathers contends that the counterclaim describes an "illegal transaction," but he fails to support that position with allegations in the counterclaim or reasonable inferences arising from those allegations.

¶42     In sum, the EFT withdrawal allegations are not sufficient to support a plausible claim that CreditBox lacked an "honest intention to abstain from taking unfair advantage" of Weathers, *see Foseid*, 197 Wis. 2d at 793 n.14, or that CreditBox failed to observe a "reasonable commercial standard[] of fair dealing" that could apply in this context.[14]

_____

[14] We emphasize that our rulings regarding the EFT withdrawal allegations, as well as the charge-off allegations addressed in the following subsection of this opinion, are limited to determinations that Weathers fails to state a claim under WIS. STAT. § 421.108 based on the sets of allegations currently pleaded in the counterclaim. We express no opinion as to whether similar allegations could state a claim in other cases, depending on the details, nor whether the circuit court in this case following remand could or should permit amendment of Weathers' counterclaim regarding the EFT withdrawal or charge-off allegations. If the potential amendment topic is litigated following remand, the circuit court is free to make its determinations based on the applicable legal standards and any discretionary decisions properly available to the court. In a similar vein, we express no view about rulings that the circuit court might be asked to make, if the good faith claim survives to the trial stage, about potential motions in limine or evidentiary rulings.

*The Charge-off Allegations*

¶43    Weathers' charge-off allegations rest in part on allegations already summarized above, namely, that Weathers made four total payments before August 7, 2015.  Weathers submits that one reasonable inference from these allegations is that the last EFT payment occurred four weeks after the first payment date of June 26, suggesting that the first default occurred one week after that, on July 24—the first day on which a payment should have been made but allegedly was not.[15]

¶44    Some or all of the following additional allegations in the counterclaim may be pertinent to Weathers' theory of the charge-off allegations.  On September 22, 2015, CreditBox "charged off" Weathers' debt under the loan.[16]  This represented a determination by CreditBox that it "was unlikely to be paid in full on the debt, while [CreditBox was] still retaining the right to attempt to collect that debt."  Before or at that time, CreditBox "'accelerated' the debt, which means that [it] declared the entire amount due and owing in one lump sum, rather than payable in installments over time."  "[T]he last contact [that CreditBox] attempted with Weathers was a phone call and voicemail message left on September 14, 2017," and after the alleged charge off CreditBox "made little to no effort to notify Weathers that it believed he was in default or that payment of any amounts were still required."  "Between 2017" and the day CreditBox filed its claim against Weathers in March 2021, Weathers "received no communications from [CreditBox] or on [its] behalf

---

[15]  Putting aside Weathers' misreading of the 2015 calendar, under his own theory, the date of last payment would have been July 17, making July 24 the alleged date of first default.

[16]  *See Charge Off*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt.").  Weathers' theory of liability rests in part on the premise that his credit history must have been harmed by the charge off.

… which informed him that his debt was not paid in full or which informed him that he had a debt that continued to accrue interest at 399.0250% per year." As of September 22, 2015, "only $24.44 of Weathers' payments had been applied to the principal of this debt. This means that Weathers still owed principal of $476 as of September 22, 2015." CreditBox's claim against Weathers "was for $2,219.40," which "means that $1,743.40 of the debt was presumably interest that accrued over the 2,029 days that the debt was allegedly owed."

¶45 Although not referenced in the counterclaim, Weathers bases his theory of this aspect of alleged good faith liability on what he characterizes as a "recommended" time period for charge offs contained in a bulletin issued by the federal Office of the Comptroller of the Currency. *See* OFFICE OF COMPTROLLER OF THE CURRENCY, OCC BULL. NO. 2000-20, UNIFORM RETAIL CREDIT CLASSIFICATION AND ACCOUNT MANAGEMENT POLICY: POLICY IMPLEMENTATION (2000). The bulletin states that the office "generally requires that closed-end loans be charged off when [they are] 120 days past due."[17] *See id.*

¶46 With that background, Weathers argues that, given the 120-day federal guidance reference, CreditBox "acted outside of reasonable commercial standards when it charged off the loan" at 60 days "past due," and did not sufficiently communicate with him regarding the charge off.[18]

---

[17] The Law Dictionary, featuring Black's Law Dictionary, 2d ed., defines a "closed-end loan" in pertinent part as a "consumer installment loan" in which "the borrower cannot alter the (1). number and amount of installments, (2). maturity date, and/or (3). credit terms." https://thelawdictionary.org/closed-end-loan/ (last visited July 28, 2023); *see also* WIS. STAT. § 421.301(27) (defining "open-end credit plan"). CreditBox does not dispute that the loan defined by the agreement here is a closed-end loan as that term is used in the federal guidance.

[18] For the sake of accuracy we note that Weathers argues that 59 days passed, but that the correct calculation is 60 days—from his alleged date of first default, July 24, to the alleged date of charge off, September 22. But this one-day difference does not affect our analysis on this issue.

¶47 We conclude that the charge-off allegations fail to state a claim for a violation of CreditBox's obligations of good faith either in its performance or enforcement of the loan agreement or the EFT authorization form, or in CreditBox's performance or enforcement of duties under WIS. STAT. § 421.108. They could not support a claim that CreditBox lacked an honest intention to avoid unfair advantage or that its conduct could have violated "reasonable commercial standards of fair dealing." To the extent that they may be based more generally on failures of CreditBox to communicate sufficiently with Weathers about the loan and outstanding debts before filing suit against Weathers, they could relate to the notice of right to cure allegations discussed in the next subsection. But we do not discern a basis for a claim specifically related to communication regarding the charge-off decision.

¶48 We begin with the loan agreement and the EFT authorization form. Based on these documents, we do not discern that the allegations in the counterclaim suggest a lack of honesty in fact or lack of observance of reasonable commercial standards of fair dealing, even construing every reasonable inference in Weathers' favor. Nothing in these documents required CreditBox to wait more than 60 days after the first failure to make a payment before charging off the debt. Nor did these documents require that, instead of or before charging off the debt, CreditBox had to continue to attempt to generate EFT payments more than 60 days after the last unsuccessful attempt. We search the counterclaim in vain for a suggestion of subterfuges, evasions, or other opportunistic behavior by CreditBox related to the charge-off decision.

¶49 Weathers' heavy reliance on the federal guidance, which to repeat is not referenced in his counterclaim, is misplaced. In Weathers' own words, this guidance gives creditors "up to 120 days to charge off a bad debt"—which is a "not

22

later than" concept, as opposed to a "not earlier than" concept. Further, he does not argue that the guidance purports to establish a minimum time period that a creditor must wait before charging off a debt.

¶50 Putting to the side the federal guidance, the counterclaim itself does not suggest a relevant objective standard that a factfinder could use to determine that CreditBox failed in its obligation of good faith by charging off the debt on day 60, as opposed to on day 75 or day 120. Weathers now asks us to deem 60 days as acting "rather rapidly," but he provides an insufficient basis to think, given the counterclaim allegations, that 60 days fell outside what is allowed under reasonable commercial standards of fair dealing.

¶51 It is the same with the allegations of failures to communicate more, or perhaps to communicate differently, with Weathers specifically about the charge off. For example, the counterclaim does not allege that CreditBox representatives ignored communications that Weathers initiated with CreditBox regarding the charge off or that representatives were evasive or inaccurate in responding to communication from him on that topic. The counterclaim alleges that CreditBox's "conduct as alleged herein demonstrates that plaintiff did not act in good faith with respect to its collection of this debt," but this is merely a legal conclusion, which we are required to ignore. *See Data Key Partners*, 356 Wis. 2d 665, ¶19.

¶52 Turning to the requirements of the Act, as CreditBox points out, Weathers does not argue that any provision in the Act required CreditBox to delay a charge off beyond 60 days or to communicate with Weathers more or in a different manner, and Weathers concedes the point by failing to reply to it.

¶53 At oral argument, Weathers argued that the failure of CreditBox to communicate with him more than it did, "especially after [CreditBox] charged off

the debt early, can be seen as a misrepresentation by omission"—that is, stated in the terms of WIS. STAT. § 421.108, it could be seen as a failure of "honesty in fact in the conduct or transaction concerned." We disagree. We do not discern in the allegations about CreditBox's communication or lack of communication regarding the charge off a basis to allege a dishonest intention to create an unfair advantage. *See Foseid*, 197 Wis. 2d at 793 n.14. The counterclaim alleges that a CreditBox representative left Weathers "a phone call and voicemail message" about one week before the alleged charge off.[19] Assuming without deciding that it could state a claim based on a dishonest intention to gain an unfair advantage for a creditor in the circumstances alleged here to charge off the debt without first making some attempt to contact the debtor about a possible charge off based on an alleged default, the counterclaim provides no basis to infer a dishonest intention in not contacting him more than is alleged (through the one voicemail) or in not contacting him in a different manner regarding the charge off. The counterclaim also alleges that, after the charge off, CreditBox made "little to no effort to notify Weathers that it believed he was in default or that payment of any amounts were still required," but we fail to see how this could support a claim of dishonesty regarding the charge-off decision. In terms of the *Foseid* "honesty in fact" formulation, Weathers fails to explain how the counterclaim states a claim that CreditBox failed to "provide information or to give notice" about the charge off in a way that "render[s] the transaction unfair." *See id.*

¶54 In sum, as with the EFT withdrawal allegations, the charge-off allegations do not support a good faith claim. In both instances, Weathers rests

---

[19] The wording in the counterclaim is ambiguous, but in Weathers' favor we interpret this to mean that there was a single telephone call that resulted in a single voicemail message notifying him that CreditBox was contemplating a charge off as a result of default.

heavily on the assertion of legal conclusions, which is not sufficient. *See **Data Key Partners***, 356 Wis. 2d 665, ¶19.

*The Notice of Right to Cure Allegations*

¶55    Weathers' notice of right to cure allegations rest on counterclaim allegations already summarized above, along with the following additional allegation. CreditBox never gave Weathers "a statutorily-compliant notice of any asserted default" or "a chance to cure said default" before it filed its small claims action against him.

¶56    In addition, Weathers now points to the fact that, in the loan agreement, CreditBox appeared to obligate itself to provide a notice of right to cure default before accelerating the debt, referring to Weathers as "you":

> In the event of default and, if you have the right to cure the default pursuant to sec. 425.105, WIS. STATS., you fail to cure the default within 15 days after you are given notice of the default, the lender may declare the whole outstanding balance due under this agreement payable at once and proceed to collect it, including commencing legal action.

¶57    As we now explain further, the notice of right to cure allegations are based in part on WIS. STAT. §§ 425.104 and 425.105(1), with CreditBox countering based almost entirely on the reasoning in ***Security Finance v. Kirsch***, 2019 WI 42, 386 Wis. 2d 388, 926 N.W.2d 167, which we address below.

¶58    Under pertinent language in WIS. STAT. § 425.105(1), "[a] merchant may not accelerate the maturity of a consumer credit transaction" or "commence any action" "unless the merchant believes the customer to be in default …, and then only upon the expiration of 15 days after a notice is given pursuant to [WIS. STAT.

§] 425.104 if the customer has the right to cure under this section." Section 425.104 provides:

> (1) A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default ([§] 425.105).

> (2) Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

¶59 Weathers argues that the notice of right to cure allegations state a good faith claim in part because, if the allegations are true, CreditBox both breached the loan agreement and violated the Act, specifically WIS. STAT. § 425.105(1), when it allegedly accelerated the debt and commenced its action against him without giving him the 15-day notice described in WIS. STAT. § 425.104. CreditBox does not dispute that these allegations state a violation of § 425.105(1).

¶60 Turning to *Kirsch*, our supreme court there emphasized that it was addressing a single question related in part to statutory provisions not at issue here, namely WIS. STAT. § 427.104(1)(g) and (1)(j). Section 427.104(1)(g) and (j) respectively define the following as "prohibited practices" under the Act: a creditor "[c]ommunicate[s] with the customer … in such a manner as can reasonably be expected to threaten or harass the customer"; a creditor makes a "[c]laim, or attempt[s] or threaten[s] to enforce a right with knowledge or reason to know that the right does not exist." Specifically, the court in *Kirsch* answered one question: Could a creditor's failure to comply with the notice of default and right to cure

26

provisions of WIS. STAT. ch. 425, prior to commencing a collections action, constitute violations of § 427.104(1)(g) and (1)(j)? *Kirsch*, 386 Wis. 2d 388, ¶¶11, 18-19.

¶61 The *Kirsch* court answered this question in the negative: Such a failure to comply with the notice and right to cure requirements as a prerequisite to commencing a collections action could not constitute violations of either of these WIS. STAT. § 427.104 subparts. *Kirsch*, 386 Wis. 2d 388, ¶19. More specifically, the court reasoned that, because a creditor's failure to provide notice of default and right to cure is a mere "procedural" failing, it could not be a "prohibited practice" under the definitions in § 427.104, and therefore the debtor's counterclaim citing § 427.104(1)(g) and (1)(j) must be dismissed. *Kirsch*, 386 Wis. 2d 388, ¶19. The court rejected what it characterized as the debtor's attempt to "shoehorn [the creditor's] failure to comply with ch. 425 into a [WIS. STAT.] ch. 427 violation in order to recover the significant remedies and penalties ch. 427 imposes." *Kirsch*, 386 Wis. 2d 388, ¶19. A creditor's failure to comply with this procedural requirement "did not disrupt [the creditor's] right to payment," and therefore, "[w]hile [the debtor] was entitled to dismissal of [the creditor's] action [without prejudice,] ... [the debtor's] counterclaims fail[ed] to state a claim for additional relief under § 427.104(1)(j)" or (1)(g). *Kirsch*, 386 Wis. 2d 388, ¶30.

¶62 CreditBox argues that, based on the reasoning in *Kirsch*, this aspect of Weathers' counterclaim based on WIS. STAT. § 421.108 must be dismissed because the alleged failure of CreditBox to give him this notice would have been, in the words of the court in *Kirsch*, "merely a failure to comply with a procedural requirement that warranted dismissal of" the creditor's action against the debtor, as opposed to constituting a substantive violation of the Act. *See Kirsch*, 386 Wis. 2d 388, ¶30. That is, CreditBox essentially argues that, while § 421.108 generally

imposes the obligation of good faith on the performance or enforcement of duties that are defined in the Act, under the reasoning in *Kirsch* the particular duties defined in WIS. STAT. §§ 425.104 and 425.105(1) must fall outside the ambit of the good faith doctrine. We disagree.

¶63    CreditBox asks us to extend *Kirsch* from the context of the Act's "prohibited practices" in debt collection to the context of the Act's obligation of good faith, despite the explicit caution of the supreme court that it intended to "cabin [its] analysis" to the specific issue raised in that appeal. *See Kirsch*, 386 Wis. 2d 388, ¶11. In the pertinent discussion, the court explicitly limited its attention to the reach of WIS. STAT. ch. 427—specifically, whether a debtor could have a remedy under WIS. STAT. § 427.105—and made no statements about the meaning of WIS. STAT. § 421.108.

¶64    Further, even putting to the side the court's caution that its opinion is narrow in scope, the reasoning in *Kirsch* does not dictate that no consumer action for a violation of WIS. STAT. § 421.108 could be based on allegations involving a lender's failure to provide notice of default and a right to cure. Specifically, the court had no occasion to consider whether a debtor could prove that a creditor's decision to accelerate a loan and then file a claim in a manner that violates the Act— together with all other relevant facts that might be produced in discovery that could support a claim of bad faith—violates § 421.108 because, according to the debtor, the creditor's conduct was motivated by a dishonest intent to obtain an unfair advantage or could violate reasonable commercial standards of fair dealing.

¶65    It is true that *Kirsch* explains that a debtor is entitled to have a creditor's claim dismissed without prejudice based on the creditor's failure to provide the required notice of default and right to cure before commencing its action

28

against the debtor. *See Kirsch*, 386 Wis. 2d 388, ¶18. Given this, an initial impression might be that creditors lack an incentive to violate the Act in this manner. But, as Weathers points out, a creditor's claim will be dismissed in these circumstances only if the debtor knows enough to move for dismissal on this ground. As the facts alleged here suggest, when not represented by counsel a debtor such as Weathers may frequently not know enough to move for dismissal on this ground.

¶66 CreditBox's argument in its briefing on this issue is entirely limited to its reliance on *Kirsch*, offering no additional reason for dismissal of the notice of right to cure allegations.

¶67 At oral argument, CreditBox attempted to suggest an additional basis for dismissal of the notice of right to cure allegations. This additional argument is based on the statement in *Hauer v. Union State Bank of Wautoma*, 192 Wis. 2d 576, 532 N.W.2d 456 (Ct. App. 1995), that WIS. STAT. § 401.203 of the uniform commercial code in Wisconsin "does not support an independent cause of action for failure to act in good faith under a contract." *See Hauer*, 192 Wis. 2d at 597 & n.7 (citing commentary to the code). CreditBox's argument appears to be that, under the reasoning in *Hauer* and *Kirsch*, when the allegation is that a creditor violated a specific provision of the Act, then a debtor's remedies must be limited to those which the Act provides for violation of that specific provision, and the violation cannot be part of an independent claim under WIS. STAT. § 421.108. We cannot discern such a rule in *Hauer* and *Kirsch*. Further, this would insert limiting language into § 421.108 that does not appear there and it would also contradict the meaning of the second sentence of § 421.108 explained above.

¶68     Having rejected CreditBox's limited arguments on this issue, we conclude that Weathers' notice of right to cure allegations cannot be dismissed at this stage in the proceedings because the counterclaim allows for at least one reasonable set of inferences to the following effect:  CreditBox violated the Act's notice and right to cure requirement as part of a dishonest attempt to gain an unfair advantage over Weathers and violated reasonable commercial standards of fair dealing by intentionally and unfairly depriving him of his lawful opportunity to attempt to stave off acceleration and a meritorious lawsuit against him.  Whether the facts that the parties here could adduce in discovery, to the extent permitted by the circuit court following remand, would require expert opinion in order to survive a possible motion for summary judgment by CreditBox is among the potential issues that would have to be presented to the court following remand if developed by the parties.  What is important for present purposes is that, based on all inferences arising from the counterclaim, it is not difficult to infer potential testimony on these topics that could support a good faith claim, whether coming from an expert or other sources.

### II.     Weathers' Unconscionability Counterclaim Under WIS. STAT. § 425.107

¶69     Weathers alleges that the totality of the conduct by CreditBox, including the same allegations underlying the EFT withdrawal, charge off, and notice of right to cure allegations described above, was unconscionable in violation of WIS. STAT. § 425.107.  CreditBox argues that we should affirm the dismissal of this counterclaim based heavily on its interpretation of *Duncan*.  CreditBox does not argue that the unconscionability counterclaim is defective in some other way.  *Duncan* stated that a consumer may bring such a claim "only in response to 'actions or other proceedings brought by a creditor to enforce rights arising from consumer

credit transactions.'"  *See* ***Duncan***, 400 Wis. 2d 1, ¶28 (quoting WIS. STAT. § 425.102).  The circuit court also relied exclusively on ***Duncan*** in granting the motion to dismiss this counterclaim.  We conclude that ***Duncan*** does not apply to the facts here and we reject the related arguments made by CreditBox on this issue.  In short, CreditBox triggered the potential for the counterclaim by filing suit against Weathers and therefore § 425.102 is not a bar to this counterclaim.  ***Duncan*** does not dictate or suggest a different result on these facts.

¶70     WISCONSIN STAT. § 425.107(1) provides:

> With respect to a consumer credit transaction, if the court as a matter of law finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall, in addition to the remedy and penalty authorized in sub. (5), either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.[20]

¶71     While we do not have occasion to address the substance of an unconscionability claim under the Act, or the specifics of Weathers' unconscionability allegations here, we note for context that WIS. STAT. § 425.107 lists nine factors as being pertinent to determining unconscionability, including these varied sources:  "[d]efinitions of unconscionability in statutes, regulations,

---

[20] Regarding the reference to "the remedy and penalty authorized in" WIS. STAT. § 425.107(5), that subsection provides:

> In addition to the protections afforded in sub. (1), the customer shall be entitled upon a finding of unconscionability to recover from the creditor or the person responsible for the unconscionable conduct a remedy and penalty in accordance with [WIS. STAT. §] 425.303.

Section 425.303 provides for a fine of $100 and the "actual damages, including any incidental and consequential damages, sustained by the customer by reason of the violation."

rulings and decisions of legislative, administrative or judicial bodies." *See* § 425.107(3)(i).

¶72    At issue in ***Duncan*** is the statement of scope for subchapter I ("Creditors' remedies"), within WIS. STAT. ch. 425 ("Consumer transactions – remedies and penalties"). Subchapter I contains the unconscionability statute, WIS. STAT. § 425.107. The scope statement provides:

> [Subchapter I] applies to actions or other proceedings brought by a creditor to enforce rights arising from consumer credit transactions and to extortionate extensions of credit under [WIS. STAT. §] 425.108.

WIS. STAT. § 425.102.

¶73    Interpreting the scope statement, our supreme court determined in ***Duncan*** that the plaintiff could not bring an unconscionability claim under WIS. STAT. § 425.107 because the plaintiff brought it in a separate lawsuit, and not "in response to 'actions or other proceedings brought by a creditor.'" ***Duncan***, 400 Wis. 2d 1, ¶27 (quoting WIS. STAT. § 425.102). The court also determined that it did not change the result that the plaintiff brought the claim in response to a non-judicial repossession by the creditor under WIS. STAT. § 425.206(1)(d). ***Duncan***, 400 Wis. 2d 1, ¶29. While this creditor conduct was adverse to the debtor, it was "not one of the 'actions or other proceedings brought by a creditor' contemplated by" § 425.102. ***Id.***

¶74    We conclude that ***Duncan***'s interpretation of WIS. STAT. § 425.102 does not address the circumstances here. We further conclude that, under the most reasonable interpretation of § 425.102, the fact that CreditBox moved for voluntary dismissal of its claim before Weathers brought his unconscionability counterclaim does not prevent Weathers from pursuing it. Weathers brought the counterclaim "in

response to" what was, in the terms of § 425.102, CreditBox's "action[]" brought "to enforce" its rights, even though CreditBox had already filed its motion for voluntary dismissal under WIS. STAT. § 805.04(1) or (2). Thus, unlike the non-judicial repossession context in *Duncan*, Weathers' counterclaim was brought in response to an action against him filed by CreditBox.

¶75    The court in *Duncan* explained that a plaintiff may not seek to enforce WIS. STAT. § 425.107 "'via a separate civil lawsuit,'" *Duncan*, 400 Wis. 2d 1, ¶26 (quoting *Riel v. Navient Sols., Inc.*, No. 16-CV-1191-JPS, 2017 WL 168900, *3 (E.D. Wis. Jan. 17, 2017)), because such an enforcement is in the nature of "a defense to contract enforcement, not an affirmative claim available outside a contract-enforcement or breach-of-contract action," *id.*, ¶27. In this case, however, Weathers did not bring his unconscionability counterclaim in a "separate civil lawsuit" or "outside a contract-enforcement or breach-of-contract action." He brought it after CreditBox sued him on the loan agreement. If Weathers had sought to enforce the unconscionability provision against CreditBox in a separate lawsuit, as the plaintiff did in *Duncan*, dismissal would be appropriate. *See id.*, ¶2. Instead, in the words of *Duncan*, he brought the counterclaim "in response to [an] 'action[] … brought by a creditor.'" *Id.*, ¶27 (quoting WIS. STAT. § 425.102).

¶76    As Weathers points out, our supreme court did not determine in *Duncan* that the rights conferred on debtors by WIS. STAT. § 425.107 are precisely coextensive with common law unconscionability, nor did it define those rights as being exclusively an affirmative defense. Instead the court observed, in support of its determination that the plaintiff in that case could not pursue the claim in a plaintiff-initiated lawsuit, that the specific limitations in the scope statement in WIS. STAT. § 425.102 "are in line with the common law doctrine of unconscionability, which is a defense to contract enforcement, not an affirmative claim available

outside a contract-enforcement or breach-of-contract action." ***Duncan***, 400 Wis. 2d 1, ¶27 (citing ***Rosecky v. Schissel***, 2013 WI 66, ¶57, 349 Wis. 2d 84, 833 N.W.2d 634, which identifies common law unconscionability as a "defense"). As Weathers points out, WIS. STAT. ch. 425 contains options for relief that are not strictly defensive in nature, which signals a legislative intent in creating § 425.107 that differs from a mere duplication of the common law defensive doctrine. *See* WIS. STAT. §§ 425.107, 425.303.

¶77　Further, our application of WIS. STAT. § 425.102 to these particular counterclaim allegations is consistent with the Act's rules of construction, referenced *supra* ¶22. As Weathers contends, a contrary ruling would effectively allow a creditor to decide whether a counterclaim alleging that it had committed unconscionable conduct under WIS. STAT. § 425.107 may be pursued against it. Notably, a creditor could obtain voluntary dismissal of a claim whenever a debtor retains counsel or the creditor suspects that the debtor has some personal understanding of the debtor's legal rights, perhaps including proof of actionable unconscionable conduct by the creditor. This is an easily foreseeable scenario. Thus, the construction urged by CreditBox is not one designed to promote the protection of customers from unfair practices, *see* WIS. STAT. § 421.102(2)(b), (c), and would significantly limit the practical utility of § 425.107.

¶78　It is true that, under some circumstances, a creditor could unilaterally obtain voluntary dismissal under WIS. STAT. § 805.04(1), and CreditBox argues that this occurred here. *See* § 805.04(1) (allowing dismissal of action by plaintiff "without order of court"). But we do not see how that could reasonably affect the application of WIS. STAT. § 425.107. Even when a creditor unilaterally obtains voluntary dismissal of its suit against a debtor, the creditor's conduct in filing suit triggers the availability of counterclaims; in that case, the voluntary dismissal does

not alter the fact that the creditor brought an "action[]" "to enforce rights arising from [a] consumer credit transaction[]."

¶79    CreditBox defends its interpretations of WIS. STAT. § 425.107 and *Duncan* in part based on the premise that a debtor claiming unconscionability would still have available remedies against a creditor under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., as well as potential state law claims of abuse of process and common law remedies.  But, assuming without deciding the availability of such alternative remedies to someone in Weathers' shoes, that does not change the fact that under CreditBox's interpretation the ability for a debtor to obtain relief under § 425.107 would be essentially under the control of creditors. Further, CreditBox does not direct us to language in § 425.107 or a closely related statute that reflects an intent to limit the exercise of consumer rights under the Act to only those situations in which other remedies may not be available.

¶80    CreditBox emphasizes that, as summarized above, it filed its motion for voluntary dismissal before Weathers brought his counterclaims, and therefore the motion for voluntary dismissal was not, in the words of *Duncan*, "a direct response to" the counterclaims.  This amounts to an argument that, under WIS. STAT. § 425.102, the timing of the filing of a creditor's motion for voluntary dismissal dictates whether a counterclaim is made "in response to" an action filed by a creditor.  We see no basis for this interpretation.  Instead, we conclude that the only reasonable interpretation of § 425.102 is that all counterclaims made by debtors in actions brought by creditors are "in response to" those actions.  Further, this interpretation is not inconsistent with any statement of our supreme court in *Duncan*, including its observation that the scope limitations in § 425.102 generally align with the defense-oriented common law doctrine.

¶81    CreditBox asserts that the unconscionability counterclaim here is "an independent, stand-alone claim."  This assertion ignores the fact that the counterclaim was brought in the same action that CreditBox initiated against Weathers—indeed, after discovery in the action was initiated.  To repeat, CreditBox sought a remedy in court that constituted an "action" "to enforce" its "rights arising from [a] consumer credit transaction[]," in response to which Weathers filed his counterclaims.  *See Duncan*, 400 Wis. 2d 1, ¶28 (quoting WIS. STAT. § 425.102).[21]

¶82    CreditBox does not develop additional arguments to support affirmance of the circuit court's decision to grant its motion to dismiss the unconscionability counterclaim, beyond those arguments already addressed, and we resolve this motion to dismiss issue based on our rejection of those specific arguments.

## CONCLUSION

¶83    For all of these reasons, we affirm the circuit court's decision to grant CreditBox's motion for voluntary dismissal, reverse its decision to grant CreditBox's motion to dismiss Weathers' good faith counterclaim, and reverse its decision to grant CreditBox's motion to dismiss Weathers' unconscionability counterclaim.

        *By the Court*.—Order affirmed in part; reversed in part and cause remanded.

---

[21] CreditBox cites a non-precedential but potentially persuasive opinion of this court addressing circumstances similar in some respects to those in this case.  *See Security Fin. v. Kirsch*, No. 2017AP1408, unpublished slip op. (WI App Apr. 11, 2018).  That opinion resolved the issue in a single, conclusory paragraph that we do not consider persuasive.