COURT OF APPEALS
DECISION
DATED AND FILED

August 1, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2023AP2183**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV199**

IN COURT OF APPEALS
DISTRICT IV

RURAL MUTUAL INSURANCE COMPANY,

    PLAINTIFF-APPELLANT,

  V.

BALLWEG IMPLEMENT CO., INC.,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Portage County: MICHAEL D. ZELL, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

¶1 BLANCHARD, J. Ballweg Implement sold a used tractor to an entity insured by Rural Mutual Insurance. Rural Mutual alleges that the tractor spontaneously combusted after the sale and after it came into the possession of the insured. Pursuing a subrogated claim in the place of the tractor purchaser, Rural

Mutual filed the action here against Ballweg (and other parties), alleging that Ballweg had breached an implied warranty of merchantability arising from the tractor sale. On Ballweg's motion, the circuit court dismissed it as a defendant based on a provision in the purchase order for the tractor sale in which Ballweg purported to disclaim an implied warranty of merchantability otherwise arising from the sale. Rural Mutual challenges this ruling on three alternative grounds.

¶2 Rural Mutual argues that the tractor sale was subject to WIS. ADMIN. CODE § Trans 139.06(3) (March 2020), which limits the ability of "dealers" of "motor vehicle[s]" to disclaim implied warranties of merchantability, and that under § Trans 139.06(3) the disclaimer here is unenforceable.[1] This argument is based on the premise that sales of all tractors in Wisconsin are subject to § Trans 139.06(3) because all tractors are self-propelled motor vehicles. We disagree. We conclude that § Trans 139.06(3) does not apply to the facts alleged here because Ballweg, as the tractor's seller, was not a "dealer" of the type regulated by WIS. ADMIN. CODE ch. Trans 139, when closely related statutes and regulations are taken into account. Notably, under those closely related provisions sellers of "farm tractors" are not "dealers" of "motor vehicles" for purposes of ch. Trans 139.

¶3 Rural Mutual separately argues that the terms of the disclaimer are ambiguous about whether an implied warranty of merchantability is excluded. We conclude that the disclaimer unambiguously excludes such warranties.

---

[1] All references to WIS. ADMIN. CODE ch. Trans 139 are to the version published in March 2020.

¶4    Rural Mutual also contends that the disclaimer is subject to a provision in the Uniform Commercial Code (UCC), WIS. STAT. § 402.719(2) (2021-22), which states that when a contract provides an "exclusive or limited remedy," but circumstances prevent application of that remedy, then other provisions of the UCC may be relied on to determine the appropriate remedy.[2] While Rural Mutual's argument is difficult to track, the contention appears to be that, under the remedy gap-filler rule in § 402.719(2), Rural Mutual must be allowed to pursue statutory remedies against Ballweg. We reject this argument for at least the following reason: Rural Mutual fails to provide a legally supported argument that its specific claim here of breach of an implied warranty of merchantability states a claim for which relief can be granted, even if we assume that § 402.719(2) applies.

¶5    Accordingly, we affirm.

## BACKGROUND

¶6    The following summarizes allegations in Rural Mutual's operative complaint, which we assume to be true for purposes of our analysis. In August 2020, Rural Mutual's insured, Eron Beef LLC, purchased a used, Case brand tractor from Ballweg. Eron never received a signed copy of a contract for the sale. Ballweg provided only an unsigned copy of a purchase order, and this occurred only after Eron had paid for the tractor. The purchase order included a provision purporting to disclaim the implied warranty of merchantability that is recognized

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

in WIS. STAT. § 402.314.[3]  The complaint contained allegations based on WIS. ADMIN. CODE § Trans 139.06(3), under which a warranty disclaimer is not enforceable if the sale at issue was not "explicitly negotiated" by the parties at the time of the sale on an "as is" or "no warranty" basis.  This included the allegation that Eron and Ballweg did not "explicitly negotiate[]" the sale through the purchase order.  The result, according to the complaint, was that Ballweg did not disclaim the implied warranty through the provision in the purchase order or otherwise.  In October 2021, while Eron representatives were using the tractor, it "spontaneously combusted, causing a fire."  The fire destroyed the tractor and other Eron property.  Rural Mutual paid for the resulting damages under its policy insuring Eron.

¶7      Pursuant to Rural Mutual's subrogation rights under the policy, it commenced this action in July 2022, standing in the shoes of Eron for purposes of Ballweg's liability to Eron.  Pertinent here, Rural Mutual named Ballweg as a defendant.  Rural Mutual sought as relief a declaration by the circuit court that an implied warranty of merchantability arose at the time of the tractor sale and also sought a judgment reflecting that Ballweg breached that warranty.[4]

---

[3] Under WIS. STAT. § 402.314(1), a contract for the sale of goods contains an "implied" "warranty that the goods shall be merchantable" "if the seller is a merchant with respect to goods of that kind."  Merchantability is defined in part as "[p]ass[ing] without objection in the trade under the contract description" and being "fit for the ordinary purposes for which such goods are used."  *See* § 402.314(2)(a), (c).

[4] Rural Mutual brought claims against other defendants, but these are generally not pertinent to this appeal.  The exception is a reference we make in the text below to factual allegations in the operative complaint in the other claims, because these allegations shed light on whether Rural Mutual's complaint states a claim for breach of the implied warranty against Ballweg.  The circuit court dismissed Ballweg's insurer as a defendant, and Rural Mutual does not challenge this ruling.

¶8 Ballweg moved to dismiss the claims against it for failure to state a claim on which relief can be granted. *See* WIS. STAT. § 802.06(2)(a)6. In support of the motion, Ballweg submitted an affidavit of its owner and shareholder, who averred that the tractor sale was conducted pursuant to a two-page document entitled "Purchase Order for John Deere Equipment (U.S. Only)." The purchase order was attached to the affidavit. Ballweg argued that, under the incorporation-by-reference doctrine, Rural Mutual's complaint incorporated the contents of the purchase order. *See **Soderlund v. Zibolski***, 2016 WI App 6, ¶¶37-38, 366 Wis. 2d 579, 874 N.W.2d 561 (under the "incorporation-by-reference doctrine," the contents of a document that is referenced in a complaint and central to a claim of the plaintiff is "not outside the pleadings" and may be considered in a motion to dismiss). Ballweg based its motion to dismiss on a provision in the purchase order that Ballweg argued disclaimed an implied warranty of merchantability arising from the tractor sale.

¶9 In opposing the motion to dismiss, Rural Mutual did not contest that the terms of the purchase order, including the disclaimer, are incorporated by reference into the operative complaint. Instead, Rural Mutual made the following arguments in the alternative: that the tractor sale is subject to WIS. ADMIN. CODE § Trans 139.06(3), under which the purchase order disclaimer is unenforceable because the tractor sale was not "explicitly negotiated" by the parties at the time of the sale on an "as is" or "no warranty" basis; that the disclaimer is ambiguous, and therefore it should be construed against Ballweg as the drafter—with the result that the implied warranty applies to the sale; and that the disclaimer is barred under WIS. STAT. § 402.719(2), which is a remedy gap-filler that applies to some sales contracts.

5

¶10    The circuit court rejected each of Rural Mutual's arguments and concluded that the disclaimer applies to bar Rural Mutual's claims against Ballweg.  The court ruled that WIS. ADMIN. CODE § Trans 139.06(3) does not apply to the tractor sale.  The court also appeared to reject the argument that the disclaimer is ambiguous, concluding instead that it is "a valid and enforceable waiver of any implied warranties" under the UCC.  The court agreed with Ballweg that WIS. STAT. § 402.719(2) does not apply to the disclaimer because the disclaimer is not a limitation on remedies or damages.  Based on these rulings, the court ultimately dismissed Ballweg from the action.[5]

¶11    Rural Mutual appeals.

## DISCUSSION

¶12    On appeal, Rural Mutual renews the same three arguments that it made in the circuit court, summarized above.

¶13    The issue is whether the allegations in Rural Mutual's operative complaint state a claim against Ballweg on which relief can be granted.  *See* WIS. STAT. §§ 802.02(1), 802.06(2)(a)6., (b).  This presents an issue of law that we review de novo.  *See **Johnson v. Rogers Mem'l Hosp., Inc.***, 2001 WI 68, ¶15, 244 Wis. 2d 364, 627 N.W.2d 890.

---

[5] Stated more precisely, the circuit court converted Ballweg's motion to dismiss into a motion for summary judgment to consider what ultimately turned out to be an uncontested factual point.  But the parties agree that, for purposes of this appeal, the issue here is whether the complaint "state[s] a claim upon which relief can be granted."  *See* WIS. STAT. §§ 802.06(2)(a)6., (b), 802.08(2); ***Broome v. DOC***, 2010 WI App 176, ¶9, 330 Wis. 2d 792, 794 N.W.2d 505 (first step in summary judgment methodology is to determine if the complaint states a claim for relief).

¶14     As part of our review, we assume that all factual allegations in the complaint, along with reasonable inferences arising from the allegations, are true. *See **CreditBox.com, LLC v. Weathers***, 2023 WI App 37, ¶14, 408 Wis. 2d 715, 993 N.W.2d 802.  Consistent with its arguments in the circuit court, Rural Mutual does not contest that the terms of the purchase order are incorporated by reference into the allegations of the complaint and therefore are part of the analysis, nor more generally does Rural Mutual dispute that the purchase order generally governed the terms of the tractor sale at issue.  *See **Fleming v. Amateur Athletic Union of the United States, Inc.***, 2023 WI 40, ¶4 & n.3, ¶12, 407 Wis. 2d 273, 990 N.W.2d 244 (reviewing motion to dismiss complaint for failure to state a claim based on allegations of complaint and documents attached to motion to dismiss incorporated by reference into the complaint).  In contrast, we ignore legal conclusions stated in the complaint.  ***CreditBox.com***, 408 Wis. 2d 715, ¶14.

¶15     We review de novo all of the issues here:  the interpretation and application of statutes, *see **Meyers v. Bayer AG***, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448; the interpretation of administrative regulations, *see **State v. Brown***, 2006 WI 131, ¶18, 298 Wis. 2d 37, 725 N.W.2d 262; and the interpretation of contract language, including the determination of whether a contract provision is ambiguous, *see **Chapman v. B.C. Ziegler & Co.***, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425.

## I.  Applicability of WIS. ADMIN. CODE § Trans 139.06(3)

¶16     Rural Mutual argues that the disclaimer of the implied warranty in the purchase order is unenforceable under WIS. ADMIN. CODE § Trans 139.06(3), because the operative complaint sufficiently alleges that the tractor sale was not "explicitly negotiated" on an "as is" basis as required by § Trans 139.06(3).

Ballweg argues in pertinent part that § Trans 139.06(3) does not apply here, because when one traces through pertinent rules and statutes, § Trans 139.06(3) does not apply to farm tractors used for farming like the one at issue here. *See* WIS. ADMIN. CODE § Trans 139.01.

¶17     We conclude that WIS. ADMIN. CODE § Trans 139.06(3) does not apply to the farm tractor sale here because other regulatory provisions, based on several statutory definitions, exclude the farm tractor as a subject of § Trans 139.06(3).  More specifically, the other regulations and statutes:  (1) limit the application of § Trans 139.06(3) to sales of "motor vehicles" by "dealers"; and (2) define "dealers" based on whether they sell vehicles that, under state statutes, must be registered in order to operate on state highways.  *See* WIS. STAT. §§ 340.01(22), 341.01(1) (defining "highway" in this context to mean "all public ways and thoroughfares and bridges on the same").  After we explain this conclusion further, we explain why we reject Rural Mutual's argument that what governs here are regulations that rely on alternative statutory definitions of "dealers" and of "motor vehicles" based on the concept of vehicle self-propulsion. Rural Mutual argues that this alternative set of regulatory and statutory provisions establishes that "motor vehicles" includes all tractors, used for farming or otherwise, including the one sold here.  Previewing our rejection of that argument, we conclude that this argument based on the vehicle self-propulsion definition fails in the face of regulatory provisions that rely on other definitions of dealers of motor vehicles, which exclude all those vehicles that are not required to be registered to operate on state highways.

¶18     "'When interpreting administrative regulations, we use the same rules of interpretation as we apply to statutes.'"  ***DOR v. Menasha Corp.***, 2008 WI 88, ¶45, 311 Wis. 2d 579, 754 N.W.2d 95 (quoted source omitted).  These rules of

interpretation include that the pertinent rule language "is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Further, the context and structure of the administrative rule inform the meaning of the rule's "operative language." *See id.*, ¶46. Therefore, "[t]he language in [an] administrative rule must be interpreted in the context in which it is used, and not in isolation but as part of a whole, and in relation to the language of surrounding or closely related administrative rules." *See Security Health Plan of Wis. Inc. v. American Standard Ins. Co. of Wis.*, 2018 WI App 68, ¶57, 384 Wis. 2d 545, 920 N.W.2d 340 (citing *Kalal*, 271 Wis. 2d 633, ¶46).

¶19 WISCONSIN ADMIN. CODE § Trans 139.06(3) provides in pertinent part:

> No implied warranty of merchantability or fitness shall be excluded in the sale of a motor vehicle unless the sale is explicitly negotiated between the purchaser and dealer licensee on an "AS IS—NO WARRANTY" basis and is in conformity with [WIS. ADMIN. CODE §] Trans 139.04(6)(a)5.

The parties agree that § Trans 139.06(3) applies to the facts alleged in the operative complaint here if two things are true: the tractor sale counts as "the sale of a motor vehicle," and Ballweg counts as a "dealer."

¶20 With this framing in mind, and applying the standards governing administrative rule interpretation stated above, we conclude that WIS. ADMIN. CODE § Trans 139.01, which limits the "[p]urpose and scope" of the chapter, directs that a definition of "motor vehicle" that excludes farm tractors applies to

the implied warranty rule in WIS. ADMIN. CODE § Trans 139.06(3). As a result, we conclude that § Trans 139.06(3) does not apply to the tractor sale here.[6]

¶21 Explaining further, WIS. ADMIN. CODE § Trans 139.01 accomplishes this result by defining limited circumstances in which ch. Trans 139 and its implied warranty rule apply to the buying and selling of motor vehicles, based on the role of the Wisconsin Department of Transportation in licensing certain kinds of "dealers" and related types of businesses under subchapter I of WIS. STAT. ch. 218. *See* WIS. STAT. § 218.0101(19) (defining "licensor" to include the department); WIS. STAT. § 218.0111(1). Specifically, § Trans 139.01 defines these limited circumstances as follows:

> (2) APPLICABILITY. This chapter applies to any person applying for or holding a Wisconsin motor vehicle salvage dealer, manufacturer, distributor wholesale auction, dealer or salesperson license.
>
> (3) This chapter applies to any sale or lease of a vehicle by a dealer to a person within the state of Wisconsin if the vehicle is delivered within the boundaries of this state notwithstanding any contractual agreement between the dealer and person to the contrary.

---

[6] Because we conclude that WIS. ADMIN. CODE § Trans 139.01, and the additional regulatory and statutory provisions that it implicates, are dispositive on the issue of whether WIS. ADMIN. CODE § Trans 139.06(3) applies, there are several arguments by the parties that we need not reach. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 (appellate courts should typically decide cases on the narrowest available grounds; "[i]ssues that are not dispositive need not be addressed"). For this reason, we do not address arguments of the parties regarding the reference in § Trans 139.06(3) to "conformity with" WIS. ADMIN. CODE § Trans 139.04(6)(a)5. Further, we do not reach the issue of whether, assuming that § Trans 139.06(3) could apply here, the allegations of the complaint support a reasonable inference that the tractor sale was not "explicitly negotiated" on an "as is" or "no warranty" basis, as required by § Trans 139.06(3). Nor do we address the issue of whether the department would have exceeded its statutorily conferred rulemaking authority to the extent that it purported to apply § Trans 139.06(3) to a definition of "motor vehicles" that includes farm tractors. *See* WIS. STAT. § 227.11(2)(a) ("a rule is not valid if the rule exceeds the bounds of correct interpretation" of "provisions of a statute enforced or administered by an agency"); *Koschkee v. Taylor*, 2019 WI 76, ¶15, 387 Wis. 2d 552, 929 N.W.2d 600.

On their face, these provisions limit the application of ch. Trans 139, including the provision addressing implied warranties in WIS. ADMIN. CODE § Trans 139.06(3), to one of two sets of circumstances: when the seller is an applicant for, or holder of, a license to conduct the named types of businesses under § Trans 139.01(2); or when a vehicle sale or lease is made by "a dealer" under the circumstances described in § Trans 139.01(3).

¶22 Rural Mutual does not argue that any of the allegations in the operative complaint state or give rise to a reasonable inference that Ballweg is a "salvage dealer, manufacturer, distributor wholesale auction," or "salesperson." This leaves the issue of whether WIS. ADMIN. CODE ch. Trans 139 applies to the allegations here because Ballweg is a "dealer" for purposes of either WIS. ADMIN. CODE § Trans 139.01(2) or (3).

¶23 As we now explain, "dealer" is defined for purposes of WIS. ADMIN. CODE ch. Trans 139 through a series of cross-references that are tied to WIS. STAT. § 218.0101. The result is that "dealer," when used in ch. Trans 139, is limited to those who sell "motor vehicles" that do not include tractors that are used for farming.

¶24 To begin, WIS. ADMIN. CODE § Trans 139.02(10g) states that "'[m]otor vehicle dealer' or 'dealer' has the same meaning as provided in" WIS. ADMIN. CODE § Trans 138.02(5g) (April 2024). Section Trans 138.02(5g), in turn, states that the definition is the same as in WIS. STAT. § 218.0101(23)(a). These connections and cross-references lead to § 218.0101(23)(a), which defines "motor vehicle dealer" as "any person, firm[,] or corporation" who:

> 1. For commission, money or other thing of value, sells, leases, exchanges, buys, offers or attempts to

negotiate a sale, consumer lease or exchange of an interest in motor vehicles; or

2. Is engaged wholly or in part in the business of selling or leasing motor vehicles, including motorcycles, whether or not the motor vehicles are owned by that person, firm or corporation.

These definitions rely in turn on the phrase "motor vehicle," which is also defined under § 218.0101. Specifically, § 218.0101(22) defines "motor vehicle" as "any motor-driven vehicle required to be registered under" WIS. STAT. ch. 341 ("registration of vehicles").[7]

¶25 Summarizing the analysis to this point, persons, firms and corporations are defined as "dealers" for purposes of WIS. STAT. ch. 218—and by extension are "dealers" under WIS. ADMIN. CODE § Trans 139.01—only if they sell "motor-driven vehicles" that are required to be registered under chapter 341 of the Wisconsin Statutes.

¶26 This brings us to relevant aspects of WIS. STAT. ch. 341. This chapter addresses the types of vehicles that must be registered for use on any "highway of this state." *See, e.g.*, WIS. STAT. § 341.04(1) (prohibiting the operation of a "motor vehicle" on state highways unless the vehicle is registered or exempt from registration, or fits within temporary exceptions not pertinent here).

---

[7] We observe that, in contrast to WIS. ADMIN. CODE §§ 138.02(5g) and Trans 139.02(10g), which both combine the definition for "'motor vehicle dealer' and 'dealer,'" the statute that provides general definitions for the motor vehicle code provides separate definitions for these terms. *See* WIS. STAT. § 340.01(11), (35e). For reasons we explain in the text, however, we do not rely on § 340.01 for its definitions of "motor vehicle," "motor vehicle dealer," or "dealer," because WIS. ADMIN. CODE §§ Trans 139.01(2)-(3) and 139.02(5g) unambiguously point to WIS. STAT. § 218.0101 and then to WIS. STAT. ch. 341 for pertinent definitions. And, in any case, the definition of "motor vehicle dealer" in § 340.01(35e) could not support Rural Mutual's approach, because it refers to § 218.0101(23)(a), which in turn requires reliance on the rules requiring that certain vehicles be registered to operate on state highways.

WISCONSIN STAT. § 341.05 lists the types of vehicles that are exempt from a registration requirement, which includes "farm tractor[s]" when used for certain purposes. *See* § 341.05(7). Starting with the "[f]arm tractor" aspect, this is defined to be a "motor vehicle designed and used primarily as an implement of husbandry for drawing, or having attached to it, other implements of husbandry." *See* WIS. STAT. §§ 340.01(16), 341.01(1) (incorporating definitions from § 340.01 into ch. 341).[8] Turning to the required purposes, farm tractors are exempt from registration on the highways when they are:

> used exclusively in agricultural operations, including threshing, or used exclusively to provide power to drive other machinery, or to transport from job to job machinery driven by a farm tractor; used for special occasions such as display and parade purposes or for participation in tractor or antique vehicle clubs, including traveling to and from such events; or used for testing, maintenance, and storage purposes.

Sec. 341.05(7).

¶27    Taking into account all of these statutes and regulations, then, as pertinent here under WIS. ADMIN. CODE § Trans 139.01, the application of WIS. ADMIN. CODE ch. Trans 139 is limited to circumstances involving "dealers," which is based on a definition of the sales of "motor vehicles" that excludes farm tractors because they need not be registered for operation on state highways.

¶28    We now turn to the relevant allegations in the operative complaint to determine if there is any reasonable inference that the tractor that Ballweg sold

---

[8] As pertinent to the meaning of "farm tractor," the phrase "implement of husbandry" is defined by statute to include a "towed vehicle that is manufactured, designed, or reconstructed to be used and that is exclusively used in the conduct of agricultural operations." *See* WIS. STAT. § 340.01(24)(a)1.

was not a "farm tractor." If it was not a "farm tractor," it would have to be registered for state highway use, and WIS. ADMIN. CODE § Trans 139.01 would apply to potentially preserve the implied warranty here.

¶29 The complaint does not allege many details about this tractor, about Eron Beef, or about Eron's use or intended use of the tractor after purchasing it, but it does include the following. It refers to Eron as a farm. It provides allegations about the manufacturer's design of the type of tractor at issue here, in addition to the manufacturer's alleged efforts to correct the design flaw that Rural Mutual alleges (in claims that are not at issue in this appeal) caused the tractor to combust. These additional allegations refer to "reports from around the world" involving "farmers … observing the [tractor] fires" ignited by an alleged defect. The alleged defect involved the buildup of "field debris" in one part of the tractor's exhaust pipe. Taken altogether, these allegations suggest that the tractor here was a "farm tractor" that was "used exclusively in agricultural operations" or "exclusively to … transport … machinery driven by a farm tractor." *See* WIS. STAT. § 341.05(7).

¶30 We have just explained why we conclude that the tractor sale here was not the sale of a "motor vehicle" by a "dealer." But, as noted above, WIS. ADMIN. CODE ch. Trans 139 applies not only to sales of "motor vehicles" by "dealers," it also "applies to any person applying for or holding a Wisconsin motor vehicle … dealer … license" of the kind regulated under WIS. STAT. ch. 218. *See* WIS. ADMIN. CODE § Trans 139.01(2)-(3). For this reason, there remains the possibility that Ballweg was subject to ch. Trans 139 as a dealer license holder or applicant. Yet Rural Mutual fares no better when we consider this alternative theory. This is because the operative complaint contains no allegations that Ballweg held or applied for a license at any pertinent time. More generally, the

complaint is sparse in providing relevant allegations regarding Ballweg's business activities from which such license holding could reasonably be inferred. Stepping back, as part of Rural Mutual's larger series of concessions by failing to address registration-based definitions of "dealer" and "motor vehicle," it effectively concedes that there is no theory under § Trans 139.01(2) or (3), supportable by the allegations of the complaint, that could save Rural Mutual's argument that WIS. ADMIN. CODE § Trans 139.06(3) applies here to render the purchase order's disclaimer unenforceable.

¶31 Thus, accounting for the fact that WIS. ADMIN. CODE ch. Trans 139 is based in part on the concept of "dealers," as defined in pertinent statutes, the allegations of the amended complaint do not support application of ch. Trans 139 here to exclude the disclaimer. Accordingly, the implied warranty rule in WIS. ADMIN. CODE § Trans 139.06(3) does not apply to Rural Mutual's claims against Ballweg to prevent dismissal of those claims based on the disclaimer.

¶32 Turning to Rural Mutual's position regarding WIS. ADMIN. CODE § Trans 139.01, it fails in its reply brief to meaningfully address Ballweg's arguments on the topic. In fact, Rural Mutual incorrectly asserts that Ballweg does not cite to the administrative code in support of its argument. Instead of attempting to address Ballweg's arguments head-on, Rural Mutual merely emphasizes that its proposed interpretation—that "motor vehicles" always includes tractors—has the benefit of being less complex than Ballweg's, because it involves fewer legal principles and cross-references. But Rural Mutual does not explain why, regardless of the number of steps that may be required to track Ballweg's positions, following those steps is not the legally correct path. We treat this gap in Rural Mutual's reply brief as a concession of the issue and, standing by itself, this concession supports accepting Ballweg's position on this issue. *See*

***United Co-op. v. Frontier FS Co-op.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578. But in the interest of completeness, we now explain why we reject the limited argument that Rural Mutual offers.

¶33 Rural Mutual's limited argument, offered as a counter to Ballweg's registration-based WIS. STAT. § 218.0101(22) definition summarized above, rests on the following proposition: WIS. ADMIN. CODE ch. Trans 139 imports into the implied warranty rule in WIS. ADMIN. CODE § Trans 139.06(3) a definition of "motor vehicle" that includes tractors. As we discuss in the next paragraph, it is true that, when one puts entirely to the side the "applicability" provisions in WIS. ADMIN. CODE § Trans 139.01(2)-(3), Rural Mutual's alternative interpretation of "motor vehicle" logically traces the directions that are provided in another part of ch. Trans 139 to import a definition based on a vehicle being self-propelled. But Rural Mutual specifically fails to provide a basis to set § Trans 139.01 to the side and generally fails to account for the applicability of ch. Trans 139 as a whole.

¶34 We now detail Rural Mutual's limited argument. It starts with the observation that WIS. ADMIN. CODE § Trans 139.02 states that "[w]ords and phrases defined in" WIS. STAT. § 340.01 "apply" to the provisions of ch. Trans 139, "unless a different definition is specified." Rural Mutual further notes that none of the definitions provided in § Trans 139.02 correspond to "motor vehicles." As a result, according to Rural Mutual, § Trans 139.02 directs that any reference to "motor vehicle" in ch. Trans 139 must match the definition in § 340.01. Section 340.01 defines "motor vehicle" as "a vehicle … which is self-propelled, except a vehicle operated exclusively on a rail." Sec. 340.01(35); *see also* § 340.01(74) ("'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except railroad trains."). As the final step in its argument, Rural Mutual observes that our

supreme court has concluded generally that, because tractors are self-propelled, all tractors are "motor vehicles" under the definitions in § 340.01(35) and (74). *See Lemon v. Federal Ins. Co.*, 111 Wis. 2d 563, 565, 567, 331 N.W.2d 379 (1983) (applying § 340.01 definitions to a "John Deere tractor with a backhoe on one end and a loader at the other end").[9]

¶35     To repeat, Rural Mutual's interpretations are logical as far as they go.  But they are fatally incomplete.  We conclude that the department's definitions contained in WIS. ADMIN. CODE § Trans 139.02 operate within the scope of regulatory WIS. ADMIN. CODE ch. 139, which does not apply to farm tractors.  That is, § Trans 139.02 and its definitions are subject to the applicability provisions in WIS. ADMIN. CODE § Trans 139.01.  Taking into account all the pertinent provisions, we conclude that it is not reasonable to interpret WIS. ADMIN. CODE § Trans 139.06(3) to mean that "dealer" and "motor vehicle" encompass the sale of a type of vehicle (a farm tractor) that—according to § Trans 139.01 and by extension pertinent provisions of WIS. STAT. ch. 218—is not the subject of the regulations in ch. Trans 139.  In arguing to the contrary, Rural Mutual emphasizes the conclusion of our supreme court in *Lemon* that the definition of "motor vehicle" in WIS. STAT. § 340.01 based on vehicle self-propulsion applies to all tractors of any kind.  Thus, it appears that tractors of all types and uses are

---

[9] The definitions of "motor vehicle" and "vehicle" in WIS. STAT. § 340.01, as it existed at the time *Lemon* was decided, are substantially similar to the current versions. *See Lemon v. Federal Ins. Co.*, 111 Wis. 2d 563, 567, 331 N.W.2d 379 (1983) (""'Motor vehicle' means a vehicle which is self-propelled ….'" (quoting then § 340.01(35)); ""'Vehicle' means every device in, upon or by which any person or property is or may be transported or drawn upon a highway….'" (quoting then § 340.01(74)).

included wherever this § 340.01 definition squarely applies, as in ***Lemon*** itself.[10] But that has no solving power in this appeal. Rural Mutual fails to explain why the unambiguous registration-based definition in ch. 218 should not apply instead.

¶36 Rural Mutual mistakenly asserts that WIS. ADMIN. CODE § Trans 139.02 does not define "dealer," and based on that misstep contends that the definition of "dealer" used in WIS. STAT. § 340.01(11) applies here. If this were true, it would tend to support the position that the implied warranty rule in WIS. ADMIN. CODE § Trans 139.06(3) relies on the definition of "motor vehicles" in § 340.01(35): any vehicle that is self-propelled. But, as Ballweg observes and as noted above, § Trans 139.02(10g) *does* supply a definition for "'[m]otor vehicle dealer' or 'dealer'" that traces through various cross-references to WIS. STAT. § 218.0101(23), not to § 340.01. Although the "dealer" definition in § 340.01(11) in some respects resembles part of the definition of "motor vehicle dealer" in § 218.0101(23), each relies on the different definitions of "motor vehicles" provided in WIS. STAT. chs. 340 and 218, respectively.

¶37 Stepping back, our interpretation of "dealer" in this context has the effect of excluding tractors and other self-propelled vehicles that do not require highway-use registration from the trade practice protections of WIS. ADMIN. CODE ch. Trans 139, including the implied warranty rule in WIS. ADMIN. CODE § Trans 139.06(3). This is a result that the legislature (or the department, in its use of authority delegated by the legislature) can be reasonably understood to intend—

---

[10] In ***Lemon***, a statute limiting the availability of damages due to the negligent operation of a state or municipal "motor vehicle" required reference to the self-propelled definition in WIS. STAT. § 340.01(35). *See **Lemon***, 111 Wis. 2d at 566-67 (applying WIS. STAT. § 345.05 (1975-76) based on definitions imported into WIS. STAT. ch. 345, from § 340.01, under WIS. STAT. § 345.01).

this is not an "absurd or unreasonable result[]." *See Kalal*, 271 Wis. 2d 633, ¶46; *Menasha Corp.*, 311 Wis. 2d 579, ¶45. Whatever the potential policy considerations may be in favor or against the decision, the legislature can rationally decide that purchasers of those vehicles that must be registered for use on Wisconsin's highways merit additional levels of trade practice protections, as opposed to purchasers of those vehicles that are exempt from registration. One rationale would be that vehicles that must be registered make more frequent use of the highways and the trade practice protections increase the level of safety of those vehicles joining the general public on the highways. Rural Mutual not only fails to engage with Ballweg's argument regarding the applicability of ch. Trans 139, but it also does not present an argument undermining this bigger picture point.

## II. Ambiguity of Disclaimer

¶38 Rural Mutual argues that the warranty disclaimer in the purchase order is ambiguous and that this provides an alternative basis to conclude that the disclaimer does not exclude an implied warranty of merchantability, which would require the denial of Ballweg's motion to dismiss. We provide additional pertinent standards and background before explaining our conclusion that the only reasonable interpretation of the purchase order is that it unambiguously excludes any implied warranty of merchantability.

¶39 In interpreting the pertinent contract language, we "generally seek[] to give effect to the parties' intentions" as expressed in the contract. *See Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586. When the terms of the contract are unambiguous, the terms control its interpretation. *See id.*, ¶¶25-26. "'A contract provision is ambiguous if it is fairly susceptible of more than one construction.'" *See id.*, ¶27 (quoted source omitted). "Contract language

is construed according to its plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Id.*, ¶28 (cited and quoted authority omitted).

¶40 Turning to additional background about the purchase order, it has the overall appearance of a form document. It bears the title "Purchase Order for John Deere Equipment (U.S. Only)." There is no dispute that the purchase order identifies the sale of only the following item: a 2014 model tractor manufactured by Case (not by John Deere). The purchase order also contains a checked box indicating that the Case tractor is used and, under the label "Hours of Use," states "583."

¶41 The purchase order also contains the warranty disclaimer, which states the following, omitting bolding:

> IMPORTANT WARRANTY NOTICE: The John Deere warranty applicable to new John Deere Equipment is printed and included with this document. There is no warranty on used equipment. The new equipment warranty is part of this contract. Please read it carefully. YOUR RIGHTS AND REMEDIES PERTAINING TO THIS PURCHASE ARE LIMITED AS SET FORTH IN THE WARRANTY AND THIS CONTRACT. IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS ARE NOT MADE AND ARE EXCLUDED UNLESS SPECIFICALLY PROVIDED IN THE JOHN DEERE WARRANTY.[11]

---

[11] All further quotation of the warranty disclaimer in the purchase order will continue to omit bolding and will further omit the disclaimer's use of all-capitalized letters. There is no argument in this appeal that the purchase order was void or unenforceable for any reason, including based on its type face or formatting. *See* WIS. STAT. § 402.316(2) (requiring, in part, that written exclusions of the implied warranty of merchantability "must be conspicuous").

Despite this reference to "the John Deere warranty," there is no dispute that, as alleged in the operative complaint, no document that could be construed as a John Deere warranty was included with the purchase order or given to Eron at the time of the sale.[12]

¶42    Rural Mutual does not argue that any feature of the purchase order, apart from the disclaimer paragraph, is ambiguous or contributes to ambiguity. Rather, Rural Mutual argues that the following features of the disclaimer render it ambiguous as to whether it excludes the implied warranty of merchantability:

- The disclaimer states that a warranty on "new John Deere equipment is … included" and "part of this contract," even though no such additional document was provided at the time of the sale, and even though the disclaimer also states that "[t]here is no warranty on used equipment."

- The disclaimer also states that the purchaser's "rights and remedies … are limited" by "the warranty and this contract" and that there is no implied warranty of merchantability "unless specifically provided in the John Deere warranty," again even though no printed warranty was provided at the time of the sale.

Rural Mutual asserts that, because the purchaser was not provided with a basis to understand what was contained in the "the John Deere warranty" referenced in the purchase order, there are reasonable interpretations of the purchase order under which the disclaimer does not exclude an implied warranty of merchantability.

¶43    We conclude that Rural Mutual fails to establish ambiguity in the purchase order when it is properly interpreted as a whole and each provision is

---

[12] Rural Mutual assails the "sales tactic" of limiting a purchaser's rights and remedies in a purchase order that references, but is not accompanied by, a warranty document, asserting that this "should not be tolerated." This assertion implies arguments that are not discernably connected to any of the three arguments that Rural Mutual raises in this appeal, and we reject it on that basis.

considered in context. Instead, Rural Mutual merely directs our attention to isolated references involving the "the John Deere warranty" that was not provided to Eron. *See Pheasant W., LLC v. University of Wis. Med. Found., Inc.*, 2023 WI App 55, ¶27, 409 Wis. 2d 539, 998 N.W.2d 600 (contracts are interpreted "'as a whole, to avoid the potential for ambiguity that can result if a small part of the agreement is read out of context'" (quoted source omitted)).

¶44 Explaining further, the reasonable reader of the purchase order as a whole, including the disclaimer, would understand that, because it identified the only item being sold as a *used* tractor, and one that was *not* manufactured by John Deere, there would be "no warranty," and the contents of a "John Deere warranty" would not apply to the purchase. Therefore, the absence of an additional document was meaningless because these references were merely relics of the fact that this was a form contract that was otherwise used for different types of sales.

¶45 Put differently, there was no reasonable confusion about what the purchase order refers to as "[t]he John Deere warranty applicable to new John Deere Equipment," "printed and included with this document," and "part of this contract." This is because the only reasonable interpretation of these phrases, in context, is that the purchase order is a form document that was designed to memorialize both used and new purchases, but that in this particular case memorialized the sale of a used tractor. The reasonable reader would understand that the statement later in the disclaimer that "implied warranties of merchantability and fitness are not made and are excluded unless specifically provided in the John Deere warranty," meant that there was no warranty of merchantability at all—the purchase order ("this contract") did not contain such a warranty, and the purchase order provided no reason to think that a "John Deere warranty" document would supply one.

¶46   In sum, we conclude that the disclaimer is not ambiguous as to whether any implied warranty of merchantability was excluded—the purchase order unambiguously excluded this implied warranty.

### III.  Applicability of WIS. STAT. § 402.719

¶47   Although the argument is unclear, Rural Mutual contends that the disclaimer is invalid because what it states about the purchaser's "rights and remedies" under "the warranty and this contract" rendered the purchase order subject to WIS. STAT. § 402.719(2).  As noted, § 402.719(2) is a part of the UCC. It states that, when a contract provides an "exclusive or limited remedy," and "circumstances cause" the remedy "to fail of its essential purpose," then other provisions of the UCC may be relied on to determine the appropriate remedy.  We now summarize the argument as we understand it.  It begins by highlighting the language in the disclaimer that refers to the inclusion of a warranty document for new John Deere equipment which, as we have explained above, was obviously not at issue in this sale.  Based on this reference, Rural Mutual argues that the purchase order provided the purchaser with some kind of remedies in the event of dissatisfaction with the transaction.  Given the prospect of purchaser remedies of some kind, the argument proceeds, because the purchase order does not specify particular remedies, and because no warranty document was provided to the purchaser at the time of sale to fill this gap, the unspecified remedies fail of their essential purpose.  Thus, Rural Mutual argues, under § 402.719(2) it is entitled to pursue UCC remedies against Ballweg (although Rural Mutual does not specify which UCC remedies).

¶48   We conclude that Rural Mutual's argument fails for at least the reason that it ignores the fact that Rural Mutual has pursued only one claim here:

breach of an implied warranty of merchantability. Rural Mutual does not explain how an issue involving potential remedies that Rural Mutual might be able to obtain, presumably if it had pursued *different* causes of action than the implied warranty breach that it actually did pursue, prevents dismissal of the specific cause of action that it has pursued.

¶49 This fundamental problem comes into sharp focus when one compares the difference between an agreement to limit purchaser remedies, which is related to the topic of WIS. STAT. § 402.719(2), and an agreement to exclude warranties, such as the disclaimer here. As Ballweg notes, our supreme court has explained the following regarding the difference between exclusions of warranties and limitations on purchaser remedies. "Under the [UCC], a seller of goods may limit [the seller's] contractual liability in two ways." *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 414, 265 N.W.2d 513 (1978). The seller "may limit the buyer's remedies for a breach of warranty, pursuant to [§] 402.719" or it "may disclaim or limit [the seller's] warranties, pursuant to [WIS. STAT. §] 402.316." *See id.* "These methods are closely related, and in many cases their effect may be substantially identical. Conceptually, however, they are distinct." *Id.* (citations omitted). "A limitation of remedies … restricts the remedies available to the buyer once a breach is established." *Id.* "A disclaimer of warranties," in contrast, "limits the seller's liability by reducing the number of circumstances in which the seller will be in breach of the contract; it precludes the existence of a cause of action." *Id.*

¶50 Bearing this distinction in mind, Rural Mutual fails to explain how the topic of remedies being inadequately alluded to in the purchase order could shed light on the meaning or applicability of the disclaimer here. We have explained above why we reject Rural Mutual's argument that the disclaimer is

ambiguous. In the words of *Murray*, here the effect of the disclaimer of the implied warranty of merchantability is that the purchase order "precludes the existence of a cause of action" based on the implied warranty of merchantability. *See Murray*, 83 Wis. 2d at 414. This is precisely the cause of action that Rural Mutual brought against Ballweg in the operative complaint.

¶51 Put differently, Rural Mutual fails to show how WIS. STAT. § 402.719(2) could apply here to allow Rural Mutual to pursue remedies against Ballweg for a breach of a warranty that is excluded for reasons we have explained above. Whatever effect the reference to "right and remedies" that is made in the disclaimer might have in other circumstances, involving other kinds of claims, Rural Mutual does not provide a legally supported argument that establishes a basis to reverse the dismissal of Ballweg from this action on a claim of a breach of an implied warranty of merchantability.

## CONCLUSION

¶52 For all of these reasons, we affirm the circuit court's order granting Ballweg's motion to dismiss.

*By the Court*.—Order affirmed.

Not recommended for publication in the official reports.

25